THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **GARLAND HAWKINS,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**EMCO CHEMICAL DISTRIBUTORS, INC.,**<br><br>**Defendant.** | ) | **Case No. 3:24-cv-00720-GCS** |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

## INTRODUCTION AND BACKGROUND

Before the Court are Defendant EMCO Chemical Distributors, Inc.'s ("EMCO") Motion for Summary Judgment, Supporting Memorandum, and Statement of Undisputed Facts. (Doc. 37, 38, 39). Plaintiff Garland Hawkins opposes EMCO's Motion. (Doc. 42). EMCO filed a Reply to Hawkins's Memorandum in Opposition. (Doc. 43). For the reasons set forth below, the Court **GRANTS** EMCO's Motion for Summary Judgment.

## FACTUAL BACKGROUND

EMCO submitted a statement of material facts contemporaneously with its Motion for Summary Judgment and supporting Memorandum. (Doc. 37, 38, 39). The Court's Local Rules require a party moving for summary judgment to submit a Statement of Material Facts with accompanying citations to the record. SDIL-LR 56.1(a). The Court's Local Rules require a brief in opposition to a motion for summary judgment to include a

Response to the Statement of Material Facts. SDIL-LR 56.1(b). "The response shall contain corresponding paragraphs to the Statement of Material Facts that state whether the fact is: (1) admitted; (2) disputed; (3) admitted in part and disputed in part (specifying which part is admitted and which part is disputed); or (4) not supported by the record citation." *Id*. Each response must be supported by a specific citation to the record. *Id*. If a fact is not specifically disputed, it "shall be deemed admitted for purposes of summary judgment." SDIL-LR 56.1(g).

Hawkins's response contains a short narrative account of his case. (Doc. 42, p. 4-5). However, it is essentially a restatement of Hawkins's complaint. It contains conclusory allegations, does not specifically respond to any material facts asserted by EMCO, and has no citations to the record. *Id*. Accordingly, the Court deems the facts in EMCO's Statement of Material Facts to be admitted for purposes of summary judgment.

The relevant facts are as follows:

EMCO is a corporation with a facility in Columbia, Illinois. (Doc. 38, p. 1. During the timeframe relevant to this case, EMCO employed eighty workers and utilized an additional twenty temporary employees. *Id*. Hawkins is a Black man who was a temporary employee hired through an employment agency. *Id.* at p. 3. He was initially hired in November 2021 and worked as a packer at EMCO's Columbia facility for three months. In February 2022, Hawkins voluntarily ended his assignment with EMCO. *Id*. at p. 3-4. EMCO re-hired Hawkins through the same employment agency and for the same assignment in April 2023. *Id*. at p. 4. During the second period of employment, Hawkins's shift ran from 3:30 P.M. to 2:30 A.M. *Id*.

EMCO has a zero-tolerance policy regarding harassment. (Doc. 38, p. 7). EMCO has disciplined two workers for the use of racial slurs at its Columbia facility. *Id*. at p. 9. A Black employee was suspended for using the word "n***a," while a White employee was terminated for yelling racial slurs. *Id*. Hawkins believes that another employee, Bruce Doty, had a history of using racial slurs but nobody has filed a complaint to that effect, nor does EMCO possess knowledge that Doty has used racial slurs. *Id*.

In May 2023, a few weeks after EMCO re-hired Hawkins, there were two incidents at EMCO's facility involving racist graffiti. The first incident occurred on May 10th. (Doc. 38, p. 4). Around 9:50 P.M., Brad Plough, an Assistant Production Supervisor and one of Hawkins's supervisors, discovered that the word "N*****S" had been carved into the wall of a men's restroom. *Id.* Plough immediately reported the graffiti to Ben Schobert, the Second Shift Production Supervisor. *Id.* Schobert photographed the carving, covered it up, and reviewed security camera footage from outside the restroom to determine who had been in the restroom during the period when the carving could have occurred. *Id*. EMCO identified seven people who could have been responsible, including Hawkins. *Id*. at p. 4-5. Two of the seven employees were White and five were Black. *Id*. at p. 5. Bruce Doty was not one of the seven employees. *Id.* at p. 9. Plough and Schobert gathered these seven employees, told them what had happened, and told them that the restroom would be monitored for the rest of the shift. *Id*. at p. 4. They then assigned individuals to guard the restroom *Id*. EMCO repaired the bathroom on the morning of May 11th, the following day. *Id*. at p. 5.

On the afternoon of May 11th, Hawkins entered a stall in the same restroom where

the first graffiti incident happened. (Doc. 38, p. 5). Hawkins came out of the stall and told Levar Morris, an Assistant Production Supervisor on the first shift, to go into the stall and look at what was written there. *Id*. Inside the stall was more graffiti. It read "Im gonna Kill A N****r" [sic]. *Id.* Management immediately covered the graffiti, called the Columbia Police Department, and informed the Facility Manager, Joseph Antolik, that there had been a second incident. *Id.*

The Columbia Police Department sent Sergeant Zach Hopkins to investigate the graffiti incidents (Doc. 38, p. 6). Antolik brought Sergeant Hopkins to the restroom where the incidents occurred. *Id.* There, Sergeant Hopkins spoke to Hawkins about the second incident. *Id.* Antolik noticed that Hawkins was avoiding eye contact and using profanity when he spoke with Sergeant Hopkins. *Id.* Sergeant Hopkins then asked for, and EMCO provided, a list of witnesses who may have entered the restroom when the incidents occurred. *Id.* The list that EMCO provided consisted of the same seven employees who entered the restroom when the May 10th incident occurred. *Id.* Sergeant Hopkins interviewed these seven employees. *Id.* At the same time, Antolik reviewed security camera footage from outside the restroom around the time of each incident. *Id*. Hawkins was the only person who entered the restroom in the time around both incidents. *Id.* at p. 6-7. Antolik concluded that Hawkins was the only person who could be responsible for the May 10th and May 11th graffiti. *Id*. at p. 7.

Joesph Antolik later spoke with Sergeant Hopkins after Sergeant Hopkins interviewed the seven employees on the list EMCO compiled. (Doc. 38, p. 7). Antolik recalls that Sergeant Hopkins said he believed Hawkins was responsible. *Id.* Sergeant

Hopkins does not recall saying that to Antolik, nor does the police report that Sergeant Hopkins wrote indicate a perpetrator. *Id*. Sergeant Hopkins said he did not believe that he had probable cause to arrest anybody in connection with the graffiti incidents. *Id*. Nonetheless, EMCO felt that it had to act due, in part, to the threatening and offensive nature of the graffiti. *Id*.

Joseph Antolik concluded that Hawkins was the only person who could have perpetrated both instances of graffiti in the restroom. (Doc. 38, p. 7). He reached this conclusion based on the security footage from outside the restroom and Sergeant Hopkins's investigation. *Id.* at p. 8. He then informed representatives from EMCO's Human Resources Department, In-House Counsel, and Executive Management of the graffiti incidents, security footage, and Sergeant Hopkins's observations. *Id*. These representatives, along with Antolik, decided to terminate Hawkins's employment at EMCO's facility. *Id*. Hawkins learned of the termination and the reason for the termination from the employment agency. *Id*. Hawkins denies that he was responsible for either graffiti incident. (Doc. 38, p. 8). He believes that he was terminated because he was in the wrong place at the wrong time and because he was a low-status worker that EMCO did not protect. *Id*. at p. 10-11.

**LEGAL STANDARDS**

Summary judgment is proper when the pleadings and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Gupta v. Melloh*, 19 F.4th 990, 997 (7th Cir. 2021) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986)); FED. R. CIV. PROC. 56(a). The

movant bears the burden of establishing the absence of a genuine issue as to any material fact and entitlement to judgment as a matter of law. *See Quinn v. Wexford Health Sources, Inc.*, 8 F.4th 557, 567 (7th Cir. 2021) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). This Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. *See Fletcher v. Doig,* 145 F.4th 756, 764 (7th Cir. 2025). *See also Bishop v. Air Line Pilots Association International,* 5 F.4th 684, 693 (7th Cir. 2021) (stating that "we are not required to draw every conceivable inference from the record . . . but 'only those inferences that are reasonable.'") (citations omitted). Summary judgment is also appropriate if a Hawkins cannot make a showing of an essential element of his claim. *See Celotex*, 477 U.S. at 322. While the Court may not "weigh evidence or engage in factfinding[,]" it must determine if a genuine issue remains for trial. *Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir. 2007).

In response to a motion for summary judgment, the non-movant may not simply rest on the allegations in his pleadings; rather, he must show through specific evidence that an issue of fact remains on matters for which he bears the burden of proof at trial. *See Knight v. Wiseman,* 590 F.3d 458, 463 (7th Cir. 2009); *Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party . . . if the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–250 (citations omitted); *Smith v. City of Janesville,* 40 F.4th 816, 821 (7th Cir. 2022); *Doxtator v. O'Brien,* 39 F.4th 852, 860 (7th Cir. 2022). In other words, "inferences relying on mere speculation or conjecture will not suffice." *DiPerna v. Chicago*

*School of Professional Psychology*, 893 F.3d 1001, 1006 (7th Cir. 2018) (citation omitted). *See also Anderson*, 477 U.S. at 252 (finding that "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]."). Instead, the non-moving party must present "definite, competent evidence to rebut the [summary judgment] motion." *Burton v. Kohn L. Firm, S.C.*, 934 F.3d 572, 579 (7th Cir. 2019) (citation omitted).

## Discussion

### I. Count I (Racial Discrimination under 42 USC § 1981), Count II (Racial Discrimination under Title VII)

Before analyzing Counts I and II, the Court addresses two threshold matters. First, the elements and methods of proof for racial discrimination claims under 42 U.S.C. § 1981 and Title VII are essentially identical.[1] *McGowan v. Deere & Co.*, 581 F.3d 575, 579 (7th Cir. 2009). The Court will thus address Counts I and II together.

Second, the parties rely on the indirect burden-shifting framework laid out by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The 7th Circuit has explained that the *McDonnell-Douglas* framework is just one method of assessing circumstantial evidence rather than a legal standard to be applied to Title VII claims. *See David v. Board of Trustees of Community College District No. 508*, 846 F.3d 216, 224 (7th Cir. 2017); *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 766 (7th Cir. 2016). At the

[1] A Section 1981 claim requires but-for causation, while a Title VII claim requires only that race is a motivating factor in the challenged adverse action. *See Lewis v. Indiana Wesleyan University*, 36 F.4th 755, 759 (7th Cir. 2022). Because the Court concludes that a reasonable jury could not find that race played a motivating factor in Hawkins's termination, the Title VII analysis is also dispositive as to the Section 1981 claim.

summary judgment stage, the question is whether the evidence, considered as a whole, supports a reasonable inference that a protected characteristic caused an adverse employment action. *See Ortiz*, 834 F.3d at 765. Because Hawkins relies on the *McDonnell-Douglas* framework, the Court will first determine whether he has established a *prima facie* case of racial discrimination and, second, whether the evidence permits a reasonable inference that Hawkins's termination was attributable to his race. *See David,* 846 F.3d at 224 (following same approach).

### A. The McDonnell-Douglas Framework

Under the *McDonnell Douglas* burden-shifting analysis, Hawkins must show that: (1) he is member of a protected class; (2) his job performance met the employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) one or more similarly situated co-workers outside his protected class were treated more favorably. *See McGowan*, 581 F.3d at 579. The parties do not dispute that the first and third elements of the framework are satisfied. Hawkins is Black and he was terminated from employment, which is plainly an adverse employment action. The Court will thus analyze the parties' submissions on the second and fourth elements.

#### i. EMCO cannot show that Hawkins was not meeting its legitimate expectations

EMCO argues that Hawkins was not meeting legitimate expectations because he violated anti-harassment policy. (Doc. 37, p. 9-10). However, viewing all facts and drawing all inferences in favor of Hawkins, the Court finds that there is a genuine dispute of material fact as to whether Hawkins met EMCO's legitimate expectations.

EMCO cites to two cases in support of its claim that a violation of company policy demonstrates that an employee has failed to meet an employer's reasonable expectations. (Doc. 37, p, 10). But, in those cases, there was no dispute that employees violated company policies. *See, e.g.*, *Cackovic v. HRH Chicago, LLC*, Case No. 12-cv-07386, 2014 WL 2893198, at *7 (N.D. Ill. June 26, 2014) (stating that "Cackovic does not dispute she violated HRH's company policies on February 17, 2012"); *Toussaint v. Sheriff of Cook County*, No. 97 C 7866, 2000 WL 656642, at *5 (N.D. Ill. March 23, 2000) (stating that "the evidence is undisputed that despite his fifteen-year tenure, [plaintiff] failed a drug test. Once he failed the drug test, he no longer met his employer's legitimate expectations."). That is not the case here. Hawkins disputes that he wrote the graffiti for which EMCO believed him to be responsible. EMCO's position would require the Court to infer that Hawkins did, in fact, do so. The Court cannot draw that inference in favor of EMCO. Accordingly, there is a genuine dispute of material fact as to whether Hawkins was meeting EMCO's legitimate expectations at the time of his termination.

**ii. Hawkins cannot show that a similarly situated co-worker outside his protected class received more favorable treatment**

To make out a *prima facie* case of employment discrimination under the *McDonnell-Douglas* framework, Hawkins must also show that one or more similarly situated employees outside of his protected class received more favorable treatment than he did. *See McGowan*, 581 F.3d at 579. "Employees are similarly situated if they dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their

conduct or the employer's treatment of them." *Dunlevy v. Langfelder*, 52 F.4th 349, 353 (7th Cir. 2022) (citing *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 690 (7th Cir. 2008)). EMCO claims that Hawkins cannot show that any similarly situated employee outside of the protected class of Black employees received preferential treatment. (Doc. 37, p. 10).

Hawkins asserts that "similarly situated non-African American employees would not reasonably be suspected or punished for reporting racial harassment[,] as seen by the other employees who were investigated and not terminated." (Doc. 42, p. 11). He further claims that he was discriminated against for reporting the graffiti. (Doc. 42, p. 5, 11). The parties do not dispute that Hawkins reported the racist graffiti. (Doc. 37, p. 5; Doc. 42, p. 5). But Hawkins has not identified any similarly situated non-African American employees who reported racial harassment. Two White employees were among the seven employees initially identified as potentially responsible for the May 10th graffiti. (Doc. 38, p. 4-5). However, neither they, nor any of the other employees investigated in relation to the graffiti other than Hawkins, reported racial harassment.[2] Thus, they did not engage in conduct similar to Hawkins's alleged conduct and are not similarly situated for purposes of establishing a *prima facie* case of racial discrimination.

Even looking more broadly at employees who were disciplined for using racial slurs, as EMCO concluded Hawkins did, the record does not reveal similarly situated

---

[2] The record shows that Brad Plough, a White employee, reported the May 10th incident. (Doc. 38, p. 4). However, Plough was Hawkins's direct supervisor, so he was not similarly situated to Hawkins. *See Dunlevy* 52 F.4th at 353-354. In any event, Hawkins did not argue that Plough is a similarly situated co-worker, so the Court considers the argument to be waived.

non-African American employees. EMCO points to a White employee, Gary Davis, who was terminated for yelling racial slurs.[3] (Doc. 38, p. 9; Doc. 39-3, p. 14-15). Davis, like Hawkins, was terminated, so he did not receive preferential treatment.

Hawkins suggested during his deposition that a different white employee, Bruce Doty, had previously used a racial slur. (Doc. 39-1, p. 89, 91). Doty's alleged use of racial slurs is different than the graffiti for which EMCO concluded that Hawkins was responsible because the graffiti, in addition to using a racial slur, also threatened violence. The use of violence is a significant differentiating circumstance from the conduct in which Doty allegedly engaged. In fact, the graffiti's threat of violence was an additional factor that prompted EMCO to ask law enforcement to investigate. (Doc. 42-1, p. 3). Hawkins was "really disturbed" by the graffiti and found it "extremely upsetting" because he knew who the graffiti "refer[ed] to." (Doc. 39-1, p. 72, 74; Doc. 42, p. 7). Hawkins's reaction is entirely understandable: threats of racist violence are disturbing and upsetting. But his reaction also underscores the difference between the use of a racial slur and the use of a racial slur in the context of a threat to kill a person. Even assuming that Bruce Doty was a similarly situated employee to Hawkins, the conduct in which he allegedly engaged is differentiated from the graffiti at issue in this case. Because Hawkins has not identified a similarly situated employee that was treated more favorably than he

---

[3] EMCO also refers to one African American employee who was suspended for using racial slurs on the radio, (Doc. 38, p. 9; Doc. 39-3, p. 12), but he is of the same race as Hawkins and so cannot serve as a comparator here.

was for engaging in similar conduct, Hawkins has not made out a *prima facie* case of racial discrimination.[4]

**B. *Ortiz* Standard**

A holistic evaluation of the evidence leads to the same conclusion: no reasonable jury could conclude that Hawkins was terminated because of his race. Crucially, the question is not whether EMCO was correct in determining that Hawkins was responsible for the racist graffiti. Rather, the only question for the Court to ask is whether EMCO "had a legitimate, nondiscriminatory reason" for terminating Hawkins. *Naik v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 627 F.3d 596, 601 (7th Cir. 2010). *See also Ineichen v. Ameritech*, 410 F.3d 956, 961 (7th Cir. 2005) (stating that "it is not the court's concern that an employer may be wrong about its employee's performance, or be too hard on its employee. Rather, the only question is whether the employer's proffered reason was pretextual, meaning that it was a lie."). Even an unfair or inaccurate reason for terminating an employee is not unlawfully discriminatory so long as it is the honest basis for the termination. *See O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011). This is so even if the asserted reason is "foolish, trivial, or baseless." *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007) (internal citation omitted). To demonstrate pretext, Hawkins "must identify such weaknesses, implausibilities, inconsistencies, or contradictions in the employer's asserted reasons that a reasonable person could find it

---

[4] Even if Doty were considered a similarly situated employee, EMCO would still be entitled to summary judgment for the reasons explained in Section I.B., *supra*, as Hawkins cannot establish pretext with respect to EMCO's legitimate, nondiscriminatory reasons for terminating him.

unworthy of credence." *Parker v. Brooks Life Science, Inc.*, 39 F.4th 931, 938 (7th Cir. 2022) (internal quotations omitted). Hawkins's subjective beliefs about the motivation behind his termination, without more, are not sufficient to create a genuine dispute of material fact. *See Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 548 (7th Cir. 2011). If EMCO's asserted reason is the true ground for termination, then EMCO is entitled to summary judgment. *See Forrester v. Rauland–Borg Corp.*, 453 F.3d 416, 417 (7th Cir. 2006). Hawkins must point to facts in the record from which a reasonable jury could conclude that Hawkins's race was a motivating factor in his termination. Because he has not done so, EMCO is entitled to summary judgment on Counts I and II.

EMCO's justification for the termination is that Hawkins was the only person that security cameras recorded entering and exiting the bathroom around the time of both graffiti incidents, as well as input from Sergeant Hopkins. (Doc. 38, p. 6-7, 8). Hawkins insists that the termination was unjustified because EMCO "singled him out" and "blam[ed] him with only circumstantial evidence." (Doc. 42, p. 11). Hawkins additionally relies on the fact that the police investigation into the graffiti incidents was inconclusive.[5] *Id*. However, these arguments go to whether EMCO was *correct* in its justification for terminating Hawkins. As explained above, the question before the Court is not whether

---

[5] Hawkins relies on Sergeant Hopkins's summaries of what other employees told Sergeant Hopkins during interviews with him. (Doc. 42, p. 11). The Court notes that these are summaries of unsworn statements and declines to consider them. *See, e.g.*, *Collins v. Seeman*, 462 F.3d 757, 760 n.1 (7th Cir. 2006) (stating that "[t]he district court did not consider the content of [summaries of unsworn] statements in its summary judgment decision, and we conclude that this was proper."); *see also Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009).

EMCO was correct, it is whether EMCO was honest about why it terminated Hawkins. Singling Hawkins out on the basis of circumstantial evidence may have been unfair. But even if it was, an unfair reason for termination does not give rise to an inference of discrimination unless it is also shown to be a false reason for termination. *See O'Leary*, 657 F.3d at 635.

Moreover, EMCO based its decision to terminate Hawkins on both Sergeant Hopkins's investigation *and* its review of security camera footage, which showed that Hawkins was the only person near the bathroom where the graffiti occurred at the times that the incidents occurred. (Doc. 38, p. 7, 8). Even assuming that the law enforcement investigation was inconclusive, the video evidence was an independent justification for Hawkins's termination. No reasonable jury could conclude that EMCO's asserted justification was unworthy of credence.

Hawkins has not presented any evidence that EMCO's justification was dishonest or unworthy of credence outside of his own subjective assertions, which are not sufficient to preclude summary judgment. *See Yancick*, 653 F.3d at 548. Hawkins has not carried his burden under the framework of *McDonnell-Douglas*, and the undisputed facts do not support a reasonable inference that Hawkins's termination was motivated by his race under *Ortiz*. EMCO is thus entitled to summary judgment on Counts I and II.

**II. Count III: Race-based harassment**

In Count III, Hawkins alleges that EMCO unlawfully exposed him to a hostile working environment in violation of Title VII of the Civil Rights Act of 1964.[6] (Doc. 1, p. 5). "To succeed on a claim for hostile environment, a Hawkins must demonstrate that: (1) he was subject to unwelcome harassment; (2) the harassment was based on race (or another protected category); (3) the harassment was severe or pervasive to a degree that altered the conditions of employment and created a hostile or abusive work environment; and (4) there is a basis for employer liability." *Robinson v. Perales*, 894 F.3d 818, 828 (7th Cir. 2018). EMCO concedes that Hawkins was subject to unwelcome harassment based on race, but disputes that the harassment was sufficiently severe or pervasive and that there is a basis for employer liability. (Doc. 37, p. 15-16). Hawkins claims the harassment was sufficiently severe to amount to a hostile work environment that altered the conditions of Hawkins's employment and that there is a basis for employer liability. (Doc. 42, p. 7). The Court begins with the alleged basis for employment liability. Because it

[6] As with Counts I and II, courts apply the same analysis to discrimination claims under Section 1981 and Title VII. Thus, although Hawkins only raises a harassment claim under Title VII, the Court will cite to both Section 1981 and Title VII cases in evaluating the claim.

concludes that there is no such basis, it does not reach the parties' arguments as to the severity or pervasiveness of the harassment.

An employer's duty under Title VII in the context of harassment by a non-supervisor[7] is to take "reasonable steps to discover and rectify acts of . . . harassment of its employees." *Paschall v. Tube Processing Corporation*, 28 F.4th 805, 813 (7th Cir. 2022) (citation omitted). Hawkins does not allege that EMCO was negligent in discovering the graffiti incidents, and the record shows that it was not negligent in doing so. EMCO had an anti-discrimination policy and a complaint mechanism for employees to confidentially report discrimination. (Doc. 39-3, p. 9-10). Moreover, employees reported both the May 10th and May 11th graffiti incidents, and EMCO reacted within minutes. These facts show that EMCO had reasonable measures in place to discover acts of harassment and that those measures worked in practice. Thus, to survive summary judgment on this claim, Hawkins must show a genuine dispute of material fact as to whether EMCO was negligent in responding to the May 10th and May 11th graffiti incidents. *See Mason v. Southern Illinois University at Carbondale*, 233 F.3d 1036, 1043 (7th Cir. 2000) (citing *Parkins v. Civil Constructors of Illinois, Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998)). He cannot do so.

EMCO responded reasonably to the reports of graffiti on May 10th and May 11th. As soon as Hawkins alerted one of EMCO's managers about the graffiti on May 11th, EMCO covered the graffiti up, informed the facility manager of the incident, and called

---

7 Neither party argues that a supervisor was responsible for the May 11th graffiti incident.

the police. (Doc. 38, p. 5; Doc. 42, p. 8-9). Hawkins points to the duration of the investigation and the fact that the police did not conclude that he was responsible for the graffiti to show that EMCO's conduct was unreasonable. (Doc. 42, p. 9). It is not clear to the Court how those facts, even viewed in the light most favorable to Hawkins, support his conclusion. Hawkins does not explain why it was unreasonable for EMCO to complete its investigation in forty-eight hours. EMCO watched security camera footage, asked law enforcement to investigate, cooperated in that investigation, reviewed the results of the investigation, and consulted with representatives from its human resources department, legal counsel, and executive management before deciding to terminate Hawkins's employment. (Doc. 38, p. 6-8). Moreover, part of the reason that EMCO was able to act quickly in response to the May 11th graffiti incident was because it was already investigating the May 10th incident. *Id.* at p. 5, 6. Hawkins clearly, and understandably, disagreed with the result of EMCO's investigation, but that, on its own, does not mean that it was unreasonable. *See, e.g.*, *Rodriguez v. Parks*, No. 2:19 CV 44, 2025 WL 636287, at *6 (N.D. Ind. Feb. 26, 2025) (stating that "[t]he fact that the investigation did not conclude in a way that [plaintiff] found satisfactory does not create an issue of fact.").

Similarly, and as explained in relation to Count II, EMCO's response was not rendered unreasonable by Sergeant Hopkins's conclusion that there was no probable cause to bring charges in relation to the May 11th graffiti incident. No finder of fact could conclude that EMCO was negligent in responding to the May 10th and May 11th graffiti

incidents. Because there is no basis upon which EMCO could be liable for the May 11th graffiti incident, EMCO is entitled to summary judgment on Count III.

## III. Count IV: Retaliation for engaging in protected conduct

Finally, Hawkins alleges that EMCO unlawfully retaliated against him for engaging in protected conduct pursuant to Title VII. To survive summary judgment on this claim, Hawkins must show that a reasonable jury could conclude that: "(1) he engaged in an activity protected by the statute; (2) he suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action." *Lesiv v. Illinois Central Railroad Company*, 39 F.4th 903, 911 (7th Cir. 2022) (citing *Lewis v. Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018)). EMCO does not dispute the first two elements. (Doc. 37, p. 18-20). EMCO does dispute that there was a causal link between Hawkins reporting racist graffiti and his termination. *Id*. In determining the existence of a genuine dispute of material fact as to causation, the Court "must consider the evidence as a whole and ask whether a reasonable jury could draw an inference of retaliation." *Parker v. Brooks Life Science, Inc.,* 39 F.4th 931, 936-937 (7th Cir. 2022) (internal citations and quotation omitted). The evidence that the Court may consider includes suspicious timing, ambiguous statements or behavior towards other employees in the same protected group as Hawkins, evidence of systematic preferential treatment of employees outside the protected group, and evidence of a pretextual reason for an adverse employment action. *See Rowlands v. United Parcel Service - Fort Wayne*, 901 F.3d 792, 802 (7th Cir. 2018). Hawkins points to the fact that his report of the graffiti prompted EMCO to investigate.

He also notes the timing of his termination and alleged deficiencies in EMCO's investigation as evidence of pretext. Even taken together, and drawing all reasonable inferences in Hawkins's favor, this evidence does not give rise to a genuine dispute of material fact that precludes summary judgment on Count IV.

First, Hawkins relies on the temporal proximity between reporting the graffiti and his termination. "Suspicious timing alone rarely establishes causation." *Parker*, 39 F.4th at 937. It is particularly unlikely to establish or support causation when there is an intervening event between the protected activity and an employee's termination. *See Davis v. Time Warner Cable of Southeastern Wisconsin, L.P.*, 651 F.3d 664, 675 (7th Cir. 2011). There was such an intervening event in this case, *i.e.*, EMCO investigated the graffiti incidents and concluded that Hawkins was responsible for them. As with *Davis*, the record shows that EMCO disciplined and terminated employees for violations of company policy prohibiting racial harassment.[8] (Doc. 37, p. 11; Doc. 39-3, p. 12, 14-15). Furthermore, like *Davis*, the plaintiff was terminated after an investigation and after several managers approved of the decision. *See Davis*, 651 F.3d at 675. Here, EMCO's Human Resources, Legal Counsel, and Executive Management departments all approved of the decision to terminate Hawkins after being informed of the incidents and subsequent investigation. (Doc. 38, p. 8). Both *Davis* and this case show that, where an

---

[8] As explained earlier in this Order, the conduct for which EMCO concluded that Hawkins was responsible was actually more severe than the conduct for which other employees were terminated or otherwise disciplined.

employer acts quickly but meticulously, timing is not enough to permit a reasonable jury to "cross the evidentiary chasm" between the employee's protected activity and his termination. *Id.*

Second, Hawkins claims that, but for his report of the second graffiti incident, EMCO would not have investigated and would not have concluded that he was responsible for the graffiti.[9] (Doc. 42, p. 14). This line of reasoning is unpersuasive. An employee's complaint does not immunize him from discipline or termination for inappropriate workplace conduct. *See Hall v. Bodine Elec. Co.*, 276 F.3d 345, 359 (7th Cir. 2002), overruled on other grounds by *Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013). The mere fact that Hawkins reported racist graffiti on May 11th does not support an inference of causation or of retaliation.

Finally, Hawkins again attacks the investigation into the graffiti. In brief, he claims that because law enforcement did not identify Hawkins as the perpetrator, EMCO's conclusion that he was responsible must have been in retaliation for reporting the second graffiti incident. (Doc. 42, p. 14-15). But Hawkins does not point to even a scintilla of evidence that links the report of the graffiti to his termination. The undisputed facts show

---

[9] Hawkins's argument also assumes that, had Hawkins not reported the second graffiti incident, EMCO would not have discovered it either on its own or through a report by another employee. A reasonable jury could not make this inference. It is directly contradicted by the record, which contains three separate instances of EMCO responding to the use of racial slurs that Hawkins did not report. Hawkins does not offer any explanation as to why EMCO was able to discover and investigate the May 10th graffiti without Hawkins reporting it but would not have discovered and investigated more graffiti in the same bathroom less than twenty-four hours later.

that EMCO began its investigation into the graffiti after the first incident (*i.e.* before Hawkins had reported anything) and noted that Hawkins could have been responsible for it because he was on video entering the restroom where the incident occurred around the time that it occurred. (Doc. 38, p. 4-5). Upon receiving Hawkins's report of the second graffiti incident, EMCO immediately sought outside assistance from law enforcement. *Id.* at p. 5. No reasonable finder of fact could conclude that EMCO retaliated against Hawkins for reporting racist graffiti merely because he did so and was later determined (correctly or not) to be responsible for the graffiti. EMCO is thus entitled to summary judgment on Count IV.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** EMCO's Motion for Summary Judgment (Doc. 39). The Court **DIRECTS** the Clerk to enter judgment for EMCO and close the case.

**IT IS SO ORDERED.**

**DATED: September 30, 2026.**

Digitally signed by Judge Sison
Date: 2026.09.30 14:40:31 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**